UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| TIMOTHY JOHNSON,<br>Institutional ID No. 12712-064<br><br>                Plaintiff,<br><br>v.<br><br>OFFICER RAMOS, *et al.*,<br><br>                Defendants. | No. 1:18-CV-00152-H |

### ORDER ACCEPTING WITH MODIFICATIONS
### THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
### THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. No objections were filed. The District Court made an independent examination of the record in this case and reviewed the Magistrate Judge's report for plain error. Finding none, the Court accepts the findings, conclusions, and recommendation of the United States Magistrate. The Court also supplements those findings and conclusions with the additional discussion of Plaintiff's claims below.

As explained below, and as recommended by the Magistrate Judge, this case is dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A for failure to state a claim. But in addition to the analysis provided by the Magistrate Judge, the Court also finds that no *Bivens* remedy is available to Plaintiff, that his claims for monetary damages are *Heck*-barred, and that his claims for injunctive relief are now moot.

**1.   Background**

Plaintiff Timothy Johnson filed this civil-rights action pursuant to 42 U.S.C. § 1983, which allows plaintiffs to bring claims for the deprivation of civil rights against officials

acting under color of state law. (See Dkt. No. 3 at 31.) Plaintiff alleges claims against twenty employees of federal correctional facilities in both Big Spring and Talladega for violating his procedural due process rights with regard to a prison-disciplinary proceeding. (Dkt. No. 3.)

Specifically, Plaintiff claims that his due process rights were violated when (1) defendants made or allowed false statements to be made about him, (2) he was not issued an incident report within twenty-four hours, (3) an investigation of his conduct began before an incident report was issued, and (4) he was refused access to the original incident and DHO reports after amended versions of those reports were given to him. (*See id.*) Plaintiff asserts that after a disciplinary hearing, he was convicted of stalking an official. He claims that after he was transferred to the higher-security institution at Talladega, he was granted a rehearing. (Dkt. No. 24 at 3.) But he was again found guilty of stalking. (*Id.*) As a result, he alleges that he lost thirty days of good-time credit and he was transferred to a higher security-level Federal Correctional Institution. (*Id.*) Plaintiff admits that his disciplinary conviction has not been invalidated. (*Id.* at 4.)

Plaintiff seeks monetary damages in the amount of $900,000, restoration of his good-time credits, and transfer to either a privately owned prison, a lower security-level (camp) facility, or home confinement. (Dkt. No. 3 at 16.)

2. Discussion

    A. **Plaintiff's civil-rights claims are not statutorily accounted for, and *Bivens* should not be extended to account for them.**

The only proper means by which plaintiff could bring his civil-rights claims is unavailable in this case. The Supreme Court has established that citizens may be entitled to remedies for harms caused by federal officials acting under color of federal law, even when

those harms are not statutorily accounted for. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390 (1971). The Fifth Circuit has recognized that a *Bivens* action is "analogous to an action under Section 1983," as the only difference is that Section 1983 is used to bring claims against state officials, whereas *Bivens* is used to bring claims against federal officials. *Evans v. Ball*, 168 F.3d 856, 863 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003). Moreover, the Fifth Circuit does not distinguish between the two types of claims. *Espinal v. Bemis*, 464 F. App'x. 250, 251 (5th Cir. 2012) (citing *Izen v. Catalina*, 398 F.3d 363, 367 (5th Cir. 2005)).

Federal courts routinely construe complaints brought by federal prisoners alleging constitutional violations as *Bivens* claims. "Because pro se complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a pro se plaintiff." *Montgomery v. Deitelbaum*, No. 3:09-CV-2407-M-BH, 2010 WL 582146, at *2 (N.D. Tex. Feb. 18, 2010) (citation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009) ("In the limited settings where *Bivens* does apply, the implied cause of action is the 'federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983.'") (citations omitted); *Abate v. Southern Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) (noting that *Bivens* applies to constitutional actions by federal, rather than state, officials).

However, the Court has restricted *Bivens* remedies to only three scenarios: (1) the Fourth Amendment prohibition against unreasonable searches and seizures; (2) the Due Process Clause of the Fifth Amendment for gender discrimination; and (3) the Cruel and Unusual Punishments Clause of the Eighth Amendment for failure to provide medical treatment. *Rroku v. Cole*, 726 F. App'x. 201, 205 (5th Cir. 2018) (citing *Ziglar v. Abbasi*, 137

3

S.Ct. 1843, 1854–55 (2017)). Expansion of *Bivens* remedies "is now considered a disfavored judicial activity," and the courts have consistently refused to extend *Bivens* to any new context or category of defendants. *Butler v. Porter*, 999 F.3d 287, 293 (5th Cir. 2021); *see also Hernandez v. Mesa*, 885 F.3d 811, 823 (5th Cir. 2018) (en banc), *aff'd*, 140 SCt. 735 (2020).

### i. Plaintiff's civil-rights claims present a new context.

Plaintiff's claims are factually distinct from previous *Bivens* cases and should be considered as arising under a new context for *Bivens* purposes. The Fifth Circuit has determined that the first step in considering a *Bivens* claim is deciding whether or not it represents a new context. *Butts v. Martin*, 877 F.3d 571, 587 (5th Cir. 2017). To make this determination, the Fifth Circuit has adopted the test used by the Supreme Court in *Ziglar*, which simply asks "whether the case is different in a meaningful way from previous *Bivens* cases." *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (citing *Ziglar*, 137 S.Ct. at 1859). Amongst other factors, the *Ziglar* Court held that a case could be different in a meaningful way if it involved a different constitutional right, the presence of special factors that previous *Bivens* cases had not considered, or if the level of generality or specificity of the official action differed from previously considered cases. *Cantu*, 933 F.3d at 423 (citing *Ziglar*, 137 S. Ct. at 1859–60).

The Supreme Court has used these factors to reject the extension of *Bivens* remedies to Fifth Amendment Due Process claims for wrongful denial of Social Security disability benefits and unlawful termination. *Schweiker v. Chilicky*, 487 U.S. 412, 420 (1988); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983). The Court distinguished each of these cases from the lone instance in which it extended *Bivens* to a Fifth Amendment Due Process claim for unlawful termination on the basis of gender discrimination. *See Davis v. Passman*, 442 U.S.

228, 249 (1979). Though *Chappell* presented an extremely similar factual resume to *Davis*, the Court refused to extend *Bivens* there on the grounds that the plaintiff was a military service member rather than a congressional employee, as was the case in *Davis*. *Chappell*, 462 U.S. at 305. Further, the *Schweiker* Court held that Congress is the appropriate body to create "new substantive liability," as it is the entity in the best position to do so. *Schweiker*, 487 U.S. at 426–27 (citing *Bush v. Lucas*, 462 U.S. 367, 388 (1983)).

Plaintiff's Fifth Amendment Due Process claims present a new context because they differ significantly from the claims *Bivens* was extended to in *Davis* in meaningful ways. In *Chappell*, the plaintiff was asserting a violation of the same clause of the same amendment in the same way as the plaintiff in *Davis*, and the Supreme Court still found that *Bivens* should not be extended to that plaintiff's claims. Plaintiff's claims, though arising under the Due Process Clause of the Fifth Amendment, differ from those in *Davis* in that they do not at all concern discrimination on the basis of sex or unlawful termination. These differences are significantly more meaningful than those deemed sufficient to refuse extension of *Bivens* in *Chappell*; thus, Plaintiff's claims arise under a new context.

    ii.  **This Court will not recognize a new *Bivens* action.**

For situations that present new contexts, *Bivens* remedies may not be created if there are special factors which indicate that Congress "might doubt the efficacy or necessity" of the remedy. *Ziglar*, 137 S.Ct. at 1848. Further, *Bivens* remedies are not to be created where there exists an alternative remedial process for protecting the plaintiff's interest. *Id.* at 1858. The Supreme Court has reiterated on numerous occasions that expanding *Bivens* remedies to new facts is a "disfavored judicial activity," that the doctrine is a "byproduct of an ancient regime," and that Congress is in a better position than the Judiciary to create new legal

liability. *See id.* at 1848 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)); *Schweiker*, 487 U.S. at 426–27 (citing *Bush*, 462 U.S. at 390).

The "special factor" inquiry concentrates on whether the Judiciary is well-suited to balance the costs and benefits of creating new *Bivens* remedies. *Ziglar*, 137 S.Ct. at 1857–58. To be a special factor, a factor must cause a court to hesitate before answering yes to that question, and the answer will most often be that Congress is better suited to do so. *Id.* at 1857–58.

In *Ziglar*, the Court refused to extend *Bivens* to create a remedy for illegal aliens seeking damages for alleged Fourth and Fifth Amendment violations by federal prison officials. *Id.* at 1851–52. There, the Court was presented with facts very similar to those in *Carlson v. Green*, 446 U.S. 14 (1980), one of the three cases in which a *Bivens* remedy was extended by the Court. *Ziglar*, 137 S.Ct. at 1864. It distinguished the two cases, however on the grounds that *Carlson* concerned Eighth Amendment rights as opposed to Fourth or Fifth; alternative remedies, such as a writ of habeas corpus or an injunction, would have been available in *Ziglar*; and the Prison Litigation Reform Act of 1995 (PLRA), enacted fifteen years after *Carlson* was decided, did not provide a standalone damages remedy against federal jailers. *Id.* at 1865. The Court interpreted the Congressional silence regarding damages remedies in the PLRA to suggest that Congress does not want a damages remedy for these harms. *Id.*

Several of the same special factors which the Court cited to refuse extending *Bivens* in *Ziglar* apply to Plaintiff, and alternative remedial schemes exist by which he could have sought relief, so this Court will not recognize a new *Bivens* action. Like the plaintiff in *Ziglar*, Plaintiff had alternative means of pursuing the relief he sought, either through a writ

6

of habeas corpus or an injunction. Additionally, the Congressional silence on the issue of damages remedies to be enforced against federal jailers persists as a special factor warranting hesitation. For these reasons, Plaintiff has failed to state a claim under *Bivens* and his claims must be dismissed.

> **B.   Plaintiff's claim for restoration of good-time credits is inappropriate in the context of a civil-rights complaint.**

Plaintiff also seeks relief that is unavailable to him in a civil-rights action. The Supreme Court has established that a plaintiff seeking relief pursuant to a civil-rights claim cannot challenge the fact or duration of his confinement or recover good-time credits lost in a prison-disciplinary proceeding. *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973). In *Preiser*, the Supreme Court addressed the potential overlap between civil rights and habeas corpus claims that prisoners could bring. *Id.* at 477. The writ of habeas corpus functions as "an attack by a person in custody to the legality of that custody," and an attempt to restore a prisoner's good-time credits functionally serves to challenge the duration of that person's time in custody; therefore, habeas corpus is the exclusive means of pursuing that relief. *Id.* at 487–88.

Plaintiff's request for restoration of good-time credits may not be granted. The request directly challenges Plaintiff's duration of confinement, so his only proper vehicle to pursue such relief is by a writ of habeas corpus. Additionally, the Court notes that Plaintiff recently filed a notice with the Court indicating that he has been released from prison. (Dkt. No. 26.) Thus, his claim is also moot. *Watkins v. Vasquez*, 451 F. App'x 429, 430 (5th Cir. 2011).

### C. Plaintiff's civil-rights claims for money damages and equitable relief are *Heck*-barred.

A civil-rights plaintiff cannot recover monetary damages for an allegedly unconstitutional conviction or imprisonment unless the conviction has been reversed, invalidated, or otherwise called into question by a court. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). As a result, any plaintiff "seeking damages pursuant to § 1983 for unconstitutional imprisonment [who] has not satisfied the favorable termination requirement of *Heck*" is "barred from any recovery and fails to state a claim upon which relief may be granted." *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000). A civil-rights claim does not accrue until the *Heck* conditions have been satisfied. *See Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995).

The Supreme Court has applied the *Heck*-bar to claims for equitable relief. *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005). And although *Heck* refers specifically to claims brought pursuant to Section 1983, the Fifth Circuit has also applied its holding to *Bivens* claims. *Whitehurst v. Jones*, 278 F. App'x. 362, 363–64 (5th Cir. 2008); *Cardona v. U.S.*, 191 F. App'x. 327, 328 (5th Cir. 2006).

Challenges to procedural defects in the prison-disciplinary context may imply the invalidity of prisoners' convictions or sentences. *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). Additionally, for the purposes of applying *Heck*, the term "conviction" includes a decision rendered in a prison-disciplinary hearing that results in a change to the prisoner's sentence, including a loss of good-time credits. *Id.* at 644.

The Fifth Circuit has acknowledged, however, the difference between "damages for the deprivation of civil rights" and "damages for the deprivation of good-time credits." *Mahogany v. Stalder*, 242 F. App'x. 261, 263 (5th Cir. 2007) (citing *Heck*, 512 U.S. at 482).

8

Claims regarding improper disciplinary procedures do not necessarily invalidate the deprivation of good-time credits. *Heck*, 512 U.S. at 483 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Civil-rights claims for damages may be cognizable if the plaintiff failed to receive a written statement of the evidence relied on in a prison disciplinary proceeding. *White v. Fox*, 294 F. App'x. 955, 963 (5th Cir. 2008); *Mahogany*, 242 F. App'x. at 263.

In *Mahogany*, where the Fifth Circuit addressed this issue as a matter of first impression, the plaintiff brought a civil-rights claim seeking the restoration of his good-time credits, the reversal of his disciplinary hearing's results, and monetary damages on the grounds that a prison disciplinary hearing violated his due process rights because he did not receive a written statement of the evidence relied on in the proceeding. *Mahogany*, 242 F. App'x. at 262.

Here, Plaintiff's civil-rights claim challenging the procedural defects of his disciplinary hearing are barred under *Heck* and *Edwards*. Should Plaintiff prevail on his due process claims, his "conviction" would necessarily be invalidated on those grounds. Like the plaintiff in *Edwards*, a dismissal of Plaintiff's disciplinary hearing would necessarily invalidate its results, including the imposed deprivation of good-time credits. Additionally, the conviction has not been overturned, invalidated, or expunged, so it is barred by *Heck*.

Plaintiff's claims for money damages and equitable relief in the form of a facility transfer do not satisfy the criteria the Fifth Circuit established in *Mahogany* and *White* required to demonstrate an exception to *Heck* and are thus *Heck*-barred. Additionally, Plaintiff's request for transfer to a lower security facility is moot due to his release from custody.

Plaintiff acknowledges that he was provided the initial incident and DHO reports that were relied on in his disciplinary hearings on October 1, 2015. (Dkt. No. 24 at 1.) Then, he claims that those reports were confiscated from him, but he was given amended incident and DHO reports prior to a rehearing. (Dkt. No. 24 at 1–2.) Plaintiff argues that his due process rights were violated because he did not receive either the initial or amended reports within a timely fashion, which he describes as being within twenty-four hours of the incident, and because he was refused access to the initial reports after he was given the amended reports.

Assuming the truth of Plaintiff's allegations, he has not alleged facts sufficient to demonstrate that his case should be granted the exception set out in *Mahogany* and *White*. The plaintiffs in those cases received no written statements of evidence whatsoever; Plaintiff, on the other hand, was given written statements of the evidence both initially and upon their amendment. He appears to base his claim on the violation of a Bureau of Prisons rule, rather than federal law. (Dkt. No. 3 at 5.) As alleged, Plaintiff's claims for money damages and equitable relief should not be severed from his good-time restoration claim, and all three claims should be dismissed with prejudice until he demonstrates that the favorable-termination requirement of *Heck* has been satisfied.

3. **Conclusion**

For the reasons stated above and as discussed in the findings, conclusions, and recommendation of the United States Magistrate Judge, the Court finds that Plaintiff's complaint must be dismissed for failure to state a claim upon which relief may be granted. His claims are not statutorily authorized and the Court declines to extend *Bivens* to a new context to permit them. Additionally, he seeks restoration of good-time credits, which is not

available to him in a civil-rights context. Finally, his claims for monetary damages and equitable relief are barred because Plaintiff has not met the favorable termination requirement of *Heck*.

Thus, the Court orders that Plaintiff's complaint is dismissed with prejudice until he demonstrates that he has met the favorable termination requirement of *Heck*.

This dismissal will count as a qualifying dismissal or "strike" under 28 U.S.C. § 1915 and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996). *See also Lomax v. Ortiz-Marquez*, ___U.S.___, 140 S. Ct. 1721 (2020).

All relief not expressly granted and any pending motions are denied.

Judgment will be entered accordingly.

So ordered.

Dated July 27, 2021.

_____
JAMES WESLEY HENDRIX
United States District Judge